UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| LORI CONRAD, | Civil No. 07-151 (JRT/JSM) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Ethel J. Schaen, **SCHAEN LAW OFFICE**, 1821 University Avenue, Suite 344, St. Paul, MN 55104; Thomas A. Krause, **THOMAS A. KRAUSE, P.C.**, 701 34th Place, West Des Moines, IA 50265, for plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for defendant.

Plaintiff Lori Conrad is suing the Commissioner of Social Security ("defendant"), seeking judicial review of defendant's denial of her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties moved for summary judgment. United States Magistrate Judge Janie S. Mayeron issued a Report and Recommendation on February 19, 2008, recommending that this Court deny defendant's motion, grant in part and deny in part plaintiff's motion, and remand the case for further proceedings. Defendant filed objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.2(b), and the Court reviews

those objections *de novo*.[1] For the reasons given below, the Court overrules defendant's objections and adopts the Report and Recommendation of the Magistrate Judge.

**BACKGROUND**

Plaintiff filed applications for DIB and SSI on September 21, 2004, alleging that she had been disabled since November 22, 2000. Plaintiff's alleged disability is based on blood clots in her right thigh, as well as various additional problems with her right foot, ankle, toe, both hands and tailbone. Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 8, 2006, before ALJ Michael D. Quayle. The hearing included testimony from plaintiff and an impartial Vocational Expert ("VE"). The ALJ denied plaintiff's applications in an order issued June 21, 2006, concluding that plaintiff is not disabled because she can perform a significant number of sedentary jobs in the economy. Plaintiff then requested review from the Commissioner's Appeals Council. The Appeals Council denied this request on December 5, 2006, making the ALJ's decision the final decision of the Commissioner in this case. *See* 20 C.F.R. §§ 404.981, 416.1481. This appeal followed.

At the time of the onset of plaintiff's disability in 2000, plaintiff was 36 years old. She has a high school education and past work experience as a school bus driver, emergency room clerk, and teacher's aide. In July 1998, plaintiff underwent carpal

---

[1] Plaintiff does not object to the Magistrate Judge's recommendation that this Court deny her summary judgment motion to the extent that it sought an award of benefits (as opposed to a remand). Accordingly, that recommendation is adopted without further discussion.

tunnel surgery. In November 2000, she was diagnosed with various foot ailments, including degenerative arthritis, and was placed in a walking cast. These procedures marked the beginning of several years of health problems related to her hands and feet. Those problems were later joined by deep venous thrombosis (DVT) in her right leg, ankle problems including an avulsion fracture, tailbone pain, and depression. Plaintiff underwent a variety of attempts to alleviate these problems under the care of numerous physicians and specialists. The course of that treatment was described at length in the thorough Report and Recommendation filed by the Magistrate Judge, and is reproduced below only to the extent necessary to resolve defendant's objections.

In determining whether plaintiff is disabled, and entitled to either DIB or SSI, the ALJ followed the five-step analysis codified at 20 C.F.R. § 404.1520. First, the ALJ determined that plaintiff has not engaged in substantial gainful activity at any time relevant to this decision. In steps two and three, the ALJ found the plaintiff suffered from a multitude of "severe" impairments – specifically, bilateral carpal tunnel releases, sesamoid fracture, status post sesamoidectomy and ostectomy of the talonavicular joint of the right foot with osteopenia, a history of thrombosis, varicosities, status post avulsion fracture of the distal fibula, degenerative disc disease of the lumbar spine, status post fracture of the right great toe, major depressive disorder, and anxiety disorder – but that none of these impairments meet or equal impairments listed in the regulations. In the fourth step, the ALJ determined that plaintiff does not have the residual functional capacity ("RFC") to perform any of her past relevant work. Finally, in the fifth step, the ALJ determined that plaintiff had a sufficient RFC to perform other jobs that exist in

significant numbers in the national economy, including work as a sorter, inspector, or plastic polisher. Accordingly, the ALJ found that plaintiff was not disabled, and it is this determination that is the focus of this appeal.

## ANALYSIS

### I. MAGISTRATE JUDGE'S FINDINGS AND DEFENDANT'S OBJECTIONS

Plaintiff presented the Magistrate Judge with two arguments for reversing the decision of the ALJ. First, plaintiff contended that the ALJ applied the wrong legal standard in assessing the opinions of her treating physician, Dr. Sheri Lofton, and consequently failed to give that opinion proper weight in determining her RFC. Second, plaintiff argued that the ALJ neglected to consider limitations on her use of her hands and her need to elevate her leg. Following a thorough review of the medical evidence and testimony offered in this case, the Magistrate Judge agreed with plaintiff's arguments in part, and recommended that the case be remanded to the ALJ. Specifically, the Magistrate Judge determined that the ALJ appeared to have indeed used an incorrect legal standard in assessing the opinion of Dr. Lofton and did not adequately explain why this opinion was not given controlling weight. In addition, the Magistrate Judge determined that the ALJ had not adequately explained why no limitations involving plaintiff's hands were included in plaintiff's RFC. Defendant objects, arguing that "we can easily trace" the ALJ's assessment of Dr. Lofton, even if that assessment was not particularly explicit. In addition, defendant argues that a remand would not serve a useful purpose, because the record clearly supports the ALJ's conclusions. *See England v.*

*Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007); 42 U.S.C. § 405(g) (noting that the Court may reject the ALJ's decision only if it is not supported by substantial evidence on the record as a whole).

## II.     THE ALJ'S ASSESSMENT OF DR. LOFTON

In determining plaintiff's RFC, the ALJ relied on testimony and medical evidence concerning approximately six years of complaints, assessments, and treatments. That record included a variety of evidence related to treatment provided by Dr. Lofton. Dr. Lofton saw plaintiff at least nine times during this time period, and during these visits, she performed numerous examinations, ordered tests related to plaintiff's DVT and other symptoms, and also performed a general physical examination. During the course of plaintiff's treatment, Dr. Lofton also referred plaintiff to a podiatrist, a physical therapist, a neurologist, and a rheumatologist.

On July 29, 2005, Dr. Lofton completed a medical assessment form concerning plaintiff's ability to work. This assessment outlined a set of relatively restrictive limitations, suggesting that plaintiff could lift only light weight; could stand and/or walk for less than one hour during an eight-hour workday; had a minimal ability to sit during the workday; could never climb, balance, stoop, crouch, kneel, or crawl; and would be affected in her ability to reach, handle, feel, push, or pull.

The ALJ also reviewed evidence related to treatment by a number of other physicians, including several of the specialists mentioned above. These doctors varied in their assessment of the severity of plaintiff's numerous conditions, and in many cases

their opinions could be read to support a less restrictive prognosis for plaintiff's work abilities.

In light of this evidence, the ALJ concluded that plaintiff had the RFC to carry ten pounds occasionally, stand and/or walk two hours of an eight-hour day, and sit six hours of an eight-hour day. The ALJ added that plaintiff should be limited to "unskilled" work with low stress and routine tasks. In support of this conclusion, the ALJ noted that he "did not place controlling weight on the opinion of Dr. Lofton . . . as the record does not *clearly support* a residual functional capacity less than sedentary level." (Emphasis added). The Court agrees with the Magistrate Judge that this explanation raises doubts about whether the ALJ applied the proper legal standard, and requires that the case be remanded.

The Code of Federal Regulations ("CFR") includes specific guidance for weighing the opinions of medical doctors in social security cases. Those regulations note that the greatest weight is to be given to "medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment(s) . . . that cannot be obtained from the objective medical findings alone or from the reports of individual examinations[.]" 20 C.F.R. § 404.1527(d)(2). Those regulations go on to enumerate several specific factors the ALJ is to consider in assessing the opinions of particular doctors, including (1) whether or not the doctor has examined the claimant; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the presence of medical evidence in the record supporting the doctor's opinion; (5) the consistency of the doctor's opinion with the record as a whole;

and (6) whether or not the doctor is a specialist. § 404.1527(d). The regulations add "[w]e will always give good reasons in our notice of determination or decision for the weight we give [to a] treating source's opinion." § 404.1527(d)(2).

In applying these regulations, the Eighth Circuit has upheld ALJ decisions discounting a treating physician's opinion "where the limitations listed on the [work ability assessment] form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (quotations omitted). However, "a treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Id.*

Here, as the Magistrate Judge observed, it is not readily apparent what standard the ALJ used to assess Dr. Lofton's opinion. That opinion came in the context of the extensive treatment relationship detailed above, which gave Dr. Lofton an opportunity to develop "a detailed, longitudinal picture" of plaintiff's overall condition. 20 C.F.R. § 404.1527(d)(2). Nonetheless, the ALJ found an RFC that substantially exceeded Dr. Lofton's recommendations.[2] In explaining this departure, the ALJ merely indicated

---

[2] As one example of this disparity, Dr. Lofton noted a number of limitations related to plaintiff's hands, as noted above. However, according to the Dictionary of Occupational Titles, each of the three jobs the ALJ determined plaintiff was capable of require either frequent or constant reaching, handling, or fingering, and a medium degree of finger dexterity. Dictionary of Occupational Titles (4th Ed., Rev. 1991), 1991 WL 679966, 1991 WL 678284, 1991 WL 678936.

that the record did not "clearly support" Dr. Lofton's conclusions.[3]  On its face, this phrase would seem to imply a far stricter standard than the one articulated in *Leckenby*. 487 F.3d at 632.  There, the Eighth Circuit suggested that, in weighing the treating physician's opinion against other portions of the record, the ALJ merely needs to determine whether that opinion is "not inconsistent" with the other substantial evidence provided.  *Id*.  That standard stops well short of requiring that the rest of the record "clearly support" the treating physician's opinion.

The uncertainty over what standard the ALJ applied may have been resolved by a more detailed explanation for why the ALJ credited some evidence and opinions over others.  However, the ALJ did not specifically name the doctors or reports he was crediting, and did not address any specific inconsistencies between those opinions and that of Dr. Lofton.  He also did not explicitly apply any of the factors articulated in 20 C.F.R. § 404.1527(d).  This makes the path to the ALJ's decision particularly difficult to divine in a case involving so many different ailments.  In sum, while it possible that the ALJ implicitly and properly applied the factors discussed in § 404.1527(d), as well as the standard articulated in *Leckenby*, his written decision did not make it clear that he did so. That, alongside the "clearly support" language and the disparity between the RFC

---

[3] As the defendant points out, the ALJ went on to briefly note that there were no "significant findings" by the other physicians that supported the severity of plaintiff's complaints.  However, it is not clear whether the ALJ offered this as further explanation of his discounting of Dr. Lofton, or whether he offered it as a reason to discount the plaintiff's subjective complaints.  *See Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (articulating the factors that must be considered in assessing a claimant's subjective complaints). In any event, this passing statement does not sufficiently clarify the standard the ALJ applied to Dr. Lofton's opinion.

determination and the opinion of Dr. Lofton, creates a reasonable basis for doubting that the ALJ applied the correct principles of law.

Defendant notes that "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (quotation omitted). However, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quotations omitted); *see also O'Halloran v. Barnhart*, 328 F. Supp. 2d 388, 391 (W.D.N.Y. 2004) (noting in a social security case that "a remand is required because the Court cannot evaluate whether substantial evidence exists to support the Commissioner's decision where there is a risk that incorrect legal standards were used as a basis for that decision"). In any event, after a careful review of the record, the Court is not persuaded that the outcome is so clear as to render a remand useless. In arguing that the Court should find any error of law harmless, defendant relies on a string-cite of physician's reports, and specifically emphasizes the opinions of Dr. Peter Badroos and Dr. Richard Hansen. Both of these doctors suggested that plaintiff could perform sedentary work. However, it appears as if Dr. Badroos only saw the plaintiff once. *Cf.* 20 C.F.R. § 404.1527(d)(2) (noting the weight carried by "medical professionals most able to provide a detailed, *longitudinal*

picture of [a] medical impairment") (emphasis added).[4] As to Dr. Hansen, plaintiff points out that he is a podiatrist, and did not consider the full range of plaintiff's impairments, including difficulties related to plaintiff's hands. In short, it is not certain that even if the ALJ had applied the appropriate standard to Dr. Lofton, he would have found her opinion outweighed by those of Dr. Badroos and Dr. Hansen. Accordingly, this Court agrees that it is appropriate to remand this case to the ALJ, to give him the opportunity to address the evidence using the proper legal standards.

In conclusion, the Court agrees with the Magistrate Judge that this case must be remanded to the ALJ. The ALJ should fully consider Dr. Lofton's opinion in light of the factors articulated in 20 C.F.R. § 404.1527(d)(2) and the standard articulated by the Eighth Circuit in *Leckenby*, 487 F.3d at 632.[5]

### ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 18] and **ADOPTS** the Report and Recommendation dated February 19, 2008 [Docket No. 17]. Accordingly, **IT IS HEREBY ORDERED** that:

---

[4] Moreover, as plaintiff points out, relying on Dr. Badroos may be problematic, because the ALJ appears to have implicitly discounted his opinion as well. Despite Dr. Badroos's recommendation that the plaintiff not work more than 20-30 hours a day, the ALJ ultimately indicated that plaintiff could handle a 40 hour work-week.

[5] In the course of assessing Dr. Lofton's opinion under the proper legal standard, the ALJ should of course consider that opinion's restrictions related to plaintiff's hands.

1. Plaintiff's Motion for Summary Judgment [Docket No. 11] is **GRANTED** to the extent that it seeks remand, but **DENIED** as to the extent that it seeks a judgment awarding benefits.

2. Defendant's Motion for Summary Judgment [Docket No. 14] is **DENIED**.

3. The case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: March 31, 2008             s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                 United States District Judge